UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON ASSOCIATION OF CHURCHES, *et al.*,<br><br>      Plaintiffs,<br><br>    v.<br><br>SAM REED,<br><br>      Defendant. | CASE NO. C06-0726RSM<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION |

## I. INTRODUCTION

This matter comes before the Court on plaintiffs' Motion for Preliminary Injunction. (Dkts. #6 and #43). Plaintiffs ask this Court to enjoin Washington State's new "matching" statute, RCW 29A.08.107, which essentially requires the state to match a potential voter's name to either the Social Security Administration ("SSA") database or to the Department of Licensing ("DOL") database before allowing that person to register to vote. Plaintiffs argue that the statute will disenfranchise a large percentage of eligible Washington voters from voting in the upcoming primary and general elections. Specifically, plaintiffs argue that the matching statute violates the federal Help America Vote Act ("HAVA") because HAVA does not require matching as a precondition to registering to vote. Plaintiffs also argue that the Washington statute violates the Voting Rights Act and the U.S. Constitution.

Defendant argues that the statute was enacted specifically to comply with HAVA, the statute does not violate the Voting Rights Act or the federal Constitution, and that, in any

ORDER
PAGE – 1

event, an injunction is not necessary, as plaintiffs are really complaining about the implementation of the new statute which the State can remedy without an injunction. (Dkts. #37 and #49).

For the reasons set forth below, the Court disagrees with defendant and GRANTS plaintiffs' motion for preliminary injunction.

## II.  DISCUSSION

### A.  Standard of Review for Preliminary Injunction

To obtain a preliminary injunction, plaintiffs must demonstrate either: (1) probable success on the merits and the possibility of irreparable harm; or (2) that serious questions have been raised and the balance of hardships tips in their favor.  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).  The Ninth Circuit Court of Appeals has explained that each of these two prongs "requires an examination of both the potential merits of the asserted claims and the harm or hardships faced by the parties.  We have held that 'these two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'  Additionally, 'in cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff.'"  *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 965 (9th Cir. 2002) (citations omitted).

Accordingly, the Court will address each of these elements – likelihood of success on the merits, irreparable harm and the public interest – in turn below.

### B.  Proper Defendant

As a threshold matter, the Court first addresses defendant's argument that he is not the proper defendant to this action.  Defendant initially asserted that, while he maintains the voter statewide registration list, the counties actually register voters, and therefore he has no direct control over the 39 separately-elected county auditors.  Defendant further asserted that these county auditors are not his "agents," such that he could somehow order the counties to register mismatched applicants.

ORDER
PAGE – 2

Plaintiffs responded that defendant had undersold his authority, and that he indeed is the proper defendant. Faced with that response, defendant has apparently abandoned his argument.[1] The Court agrees with plaintiffs.

Under Washington State law, the Secretary of State is the chief elections officer of the state, and he has supervisory control over local elections officials, including the power and responsibility to issue instructions and promulgate rules to ensure that elections are conducted in a uniform manner. He also has the authority to instruct and compel county elections officials to comply with the laws, rules and guidelines governing elections. RCW 29A.04.230, 610-611, and 530. Indeed, the matching regulation directing the counties what to do with unmatched registrations, WAC 434-324-040, was promulgated pursuant to that authority. Furthermore, defendant's representative, Paul Miller, testified at deposition that the separate counties act as the Secretary of State's "agents" for registering voters. (Dkt. #44, Ex. 12 at 125).[2] Thus, the Court finds that plaintiffs have properly named Secretary of State Sam Reed as the defendant to this action.

**C. Analysis of the Instant Motion for Injunctive Relief**

*1. Likelihood of Success on the Merits*

At the outset, it is important to note exactly what relief plaintiffs seek in this Court. As has been made clear from their briefing and during oral argument, plaintiffs do not seek to enjoin defendant from matching applications at all. Rather, they seek to enjoin defendant from enforcing RCW.29A.09.107, which requires an application to be matched *before* that applicant can be registered to vote. As a result of such injunction, the counties of Washington State

---

[1] While it appears that defendant abandoned the argument in his supplemental reply brief, during oral argument on July 28, 2006, defense counsel again suggested that defendant did not have the authority to impose instructions for handling voter registration forms on the separate county auditors. Accordingly, the Court will address the issue.

[2] For ease of reference, when referring to specific page numbers within a deposition exhibit, the Court cites to the page number of the deposition transcript located in the upper right hand corner as opposed to the exhibit page number located in the bottom left hand corner.

ORDER
PAGE – 3

1  would simply register voters as they had been doing prior to January 1, 2006, the date the

2  statute became effective.

3      Plaintiffs argue that HAVA, the Voting Rights Act, and the U.S. Constitution prohibit

4  state laws like Washington's that make matching a requirement for registration.  For the reasons

5  discussed below, the Court agrees that plaintiffs have demonstrated a strong likelihood of

6  success on the merits of their claims.

7      a.  Help America Vote Act ("HAVA"), 42 U.S.C. § 15301, *et seq.*

8      Congress passed HAVA in the aftermath of the 2000 Presidential Election.  The statute

9  was passed in large part to ensure that eligible voters would not be left off the voting rosters or

10  turned away from the polls.  HAVA seeks to ensure that voting and election administration

11  systems will "be the most convenient, accessible, and easy to use for voters" and "will be

12  nondiscriminatory and afford each registered and eligible voter an equal opportunity to vote and

13  have that vote counted."  42 U.S.C. § § 15381(a)(1) and (3).

14      HAVA requires the states to create reliable registration rolls by implementing a uniform,

15  regularly updated computerized statewide voter registration list.  42 U.S.C. § 15483(a).  The

16  statute requires all applicants to provide a unique identifying number – their driver's license

17  number or the last four digits of their social security number – on the application.  HAVA then

18  requires states to match those numbers with the SSA database or DOL database.  Applicants

19  who do not have one of those numbers are assigned a unique identifying number by the state.

20  Those applicants need not be matched prior to registration.

21      Plaintiffs argue that Washington's matching precondition violates, and is therefore

22  preempted by, HAVA because (1) it is impossible to comply with both state and federal

23  requirements and (2) the state law stands as an obstacle to the accomplishment and execution of

24  the full purpose and objectives of Congress.  *See Williamson v. Gen. Dynamics Corp.*, 208 F.3d

25  1144, 1152 (9th Cir. 2000).

26      It is clear from the language of the statute and by looking at legislative history that
HAVA's matching requirement was intended as an administrative safeguard for "storing and

managing the official list of registered voters," and not as a restriction on voter eligibility. *See* 42 U.S.C. § 15483(a)(1)(A)(i). This is evidenced by the requirement that a person who has no driver's license or social security number be given a unique identifying number, but not be matched, prior to registering to vote. § 15483(a)(1)(A)(ii). Legislative history confirms that it is the assignment of some kind of unique identifying number to the voter that is the requirement of § 15483(a)(1)(A)(i), not the "match." 148 Cong. Rec. S10488-02, *S10490 (daily ed. Oct. 16, 2002); *see also* H.R. Rep. 107-329(I), at 36 (2001).

In addition, requiring a match prior to registration directly conflicts with 42 U.S.C. § 15483(b). That section of HAVA requires that a first-time voter who registered by mail must verify his or her identity before voting. To vote, the applicant may show some form of identification either at the time of registration or when he or she actually votes. 42 U.S.C. § 15483(b)(2)(A) and 3(A). However, such identification is *not required* if the information on the voter registration application has been matched. 42 U.S.C. § 15483(b)(3)(B). In other words, "matching" serves as a substitute for voter ID. Thus, the language of this section makes clear that HAVA requires matching for the purpose of verifying the identity of the voter before casting or counting that person's vote, but not as a prerequisite to registering to vote.

That intent is revealed in defendant's flawed argument that § 15483(b)(3)(B) merely requires additional obligations on voters who have registered by mail, including the requirement that those voters show identification at the time they case their ballots, unless they have already been matched. That assertion cannot be correct if HAVA also requires the state to match names prior to registration. If that were true, and HAVA required matching as a precondition to voting, the language of 42 U.S.C. § 15483(b)(3)(B) would become mere surplusage. For example, if matching is required in order to register, and section 154383(b)(3)(B) simply states additional obligation for those voters who have already registered by mail – which by Washington law would require that they also be matched prior to registration – then there would be no need for HAVA to provide any additional means of identification verification as set forth in this section. Indeed, by virtue of having been "matched" as a function of registering by

mail, the voter's identity would be verified and no further ID would be required. As a result, RCW 29A.08.107 directly conflicts with HAVA.

RCW 29A.08.107 also conflicts with HAVA's "fail-safe" provisional ballot provision. Under HAVA, a first-time, mail-in registrant who fails to provide ID, and has not been matched, must still be allowed to vote using a provisional ballot. 42 U.S.C. § 15483(b)(2)(B). Likewise, under § 15482 of HAVA, any person whose name does not appear on the voting roster, but declares that he or she is a registered voter, may vote by provisional ballot. 42 U.S.C. § 15482. These sections of HAVA would be rendered moot if matching was a prerequisite to registering.

The Supreme Court has explained that federal law will preempt a state law when:

> it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'

*English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990) (citations omitted); *Motus v. Pfizer Inc.*, 127 F. Supp. 2d 1085, 1091-1092 (D. Cal. 2000). The party asserting that a claim is preempted bears the burden of establishing preemption. *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n. 6 (9th Cir. 1995).

For the reasons set forth above, the Court finds that plaintiffs have demonstrated a strong likelihood of success on the merits of their argument that RCW 29A.08.107 stands as an obstacle to achieving the purposes and objectives of HAVA, and is therefore preempted by federal law.

### b.  Voting Rights Act of 1870, as amended, 42 U.S.C. § 1971

Similarly, the Court finds that plaintiffs have demonstrated a likelihood of success on the merits of their claim that RCW 29A.08.107 violates section 1971 of the Voting Rights Act, also known as the "materiality" section. That section provides:

> No person acting under the color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

42 U.S.C. § 1971(a)(2)(B).

Under Washington State's Constitution, certain factors bear on a person's eligibility to vote. To vote, a person must: (1) have U.S. citizenship; (2) be 18 years of age or older; (3) have been a resident of the State, county and precinct in which he or she seeks to vote for the 30 days prior to the election; (4) have not been convicted of an infamous crime without restoration of his or her civil rights; and (5) have not been judicially declared incompetent. WASH. CONST. art. VI, § § 1, 3. Plaintiffs argue that the types of errors or inconsistencies that preclude a successful match under Washington's statute do not provide material information about any of these factors. Defendant simply responds, without authority, that the information the State uses for matching purposes, such as a person's driver's license, social security number, address, and date of birth, is material.

In *Schwier v. Cox*, 439 F.3d 1285 (11th Cir. 2006), the Eleventh Circuit Court of Appeals considered "'whether the disclosure of a potential voter's [SSN] is 'material' in determining whether he or she is qualified to vote under Georgia law for purposes of section 1971 of the Voting Rights Act.'" *Schwier*, 439 F.3d at 1286 (citation omitted) (alteration in original). Adopting the reasoning of the district court, the court of appeals affirmed the decision that "Georgia cannot mandate disclosure of SSNs because such information is not 'material' to a voter registration system under § 1971(a)(2)(B) of the Voting Rights Act." *Id.*

Before the district court, the *Schwier* plaintiffs presented an argument similar to that advanced by plaintiffs in the instant case. They argued that an individual is qualified to vote under Georgia law if he is a United States citizen, a Georgia resident, at least 18 years of age, not incompetent, and not a felon, and, therefore, disclosing one's social security number could not be material in determining whether one is qualified to vote under Georgia law. *Schwier v. Cox*, 412 F. Supp. 2d 1266, 1276 (D. Ga. 2005). Defendant, Georgia's Secretary of State, had argued, as does the instant defendant, that requiring an applicant's social security number was material because it would help prevent registration and voter fraud. *Id.* While the district court agreed that requiring the disclosure of a social security number could help prevent fraud, the

ORDER
PAGE – 7

court also concluded that such number could not be material in determining whether an applicant is qualified to vote under Georgia law.

Similarly, defendant has failed to demonstrate how an error or omission that prevents Washington State from matching an applicant's information is material in determining whether that person is qualified to vote under Washington law.  Thus, at this time, the Court finds that plaintiffs have demonstrated a strong likelihood of success on the merits of their claim that RCW 29A.08.107 is in direct conflict with the "materiality" provision of section 1971 of the Voting Rights Act.

### c.  Constitutional Violations

Defendant has failed to address plaintiffs' arguments that the matching statute violates several provisions of the U.S. Constitution.  However, because the Court finds that plaintiffs have demonstrated a likelihood of success on its HAVA and Voting Rights Act arguments, the Court need not address their federal Constitutional arguments.

*2. Irreparable Harm*

The Court finds that plaintiffs have adequately demonstrated irreparable harm.  The number of applicants cancelled, deleted or otherwise rejected is 178 as of June 22, 2006. Plaintiffs identify specific people whose applications have been rejected simply because the identification number provided by the applicant could not be matched.  (*See* Dkt. #52 at 3-4). Plaintiffs also identify several other eligible voters who have been rejected because of problems using married versus maiden names. (*See* Dkt. #52 at 4).

Moreover, discovery has revealed that many counties are hesitant to comply with the strict matching requirements, and this had led to absurd results around the state.  It appears that no county is approaching the statute in the same way.  (*See* Dkt. #43 at 11-14).

Defendant dismisses this evidence as "theoretical," and asserts that many of the problems identified by plaintiffs are just details that can be easily cured.  However, as plaintiff's evidence demonstrates, such harm is not theoretical, it is actual.  More importantly, the Court does not consider a person's right to vote a mere "detail" to be so easily dismissed.

ORDER
PAGE – 8

*3. The Public Interest*

Defendant argues that the public's interest in preventing voter fraud weighs against an injunction in this case. The Court disagrees. Given Washington's most recent governor's election, where the winner was decided by just hundreds of votes, the Court finds that the public interest weighs strongly in favor of letting every eligible resident of Washington register and cast a vote.

**D. Bond**

Plaintiffs assert, and defendant does not argue otherwise, that because defendant will not suffer material monetary loss as a result of entering preliminary injunctive relief, a bond is not required under Fed. R. Civ. P. 65(c).

### III.  CONCLUSION

Having considered plaintiffs' motion for injunctive relief, defendant's opposition, the oral arguments presented by the parties on July 28, 2006, and the remainder of the record, the Court hereby finds and ORDERS:

(1)  Plaintiffs' Motion for Preliminary Injunction (Dkts. #6 and #43) is GRANTED, and defendant, his employees, agents, representatives and successors in office are preliminarily enjoined from enforcing RCW 29A.08.107, and refusing to register voters whose information cannot be matched.

(2)  The Clerk shall direct a copy of this Order to all counsel of record.

DATED this   1   day of August 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE – 9